IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| LAURIE PASSINI,<br><br>Plaintiff,<br><br>v.<br><br>SAFT AMERICA, INC.,<br><br>Defendant. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

COMES NOW, Laurie Passini ("Plaintiff" or "Ms. Passini"), by and through her undersigned counsel, and files this, her Complaint, and shows the Court as follows:

**NATURE OF COMPLAINT**

1.

Plaintiff brings this action for damages and reasonable attorney fees against Defendant Saft America, Inc. ("Defendant") for violations of her rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. ("ADA").

2.

This action challenges Defendant's discriminatory conduct in terminating Plaintiff's employment based on her disability after she disclosed her disability during the hiring process and requested reasonable accommodations, and in retaliating against Plaintiff for asserting her rights under the ADA, in violation of the Americans with Disabilities Act, as amended.

## **JURISDICTION AND VENUE**

3.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this claim involves a federal question brought under 42 U.S.C. §12101 et seq. Ms. Passini invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 12117.

4.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because: (a) Defendant's place of business where Plaintiff worked is located in Valdosta, Georgia, within this district; and (b) a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district.

## ADMINISTRATIVE PROCEDURES

5.

Plaintiff has fulfilled all conditions precedent necessary to proceed with this cause of action under the ADA. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") Savannah Local Office on July 9, 2025, Charge Number 415-2025-00918, and received her Notice of Right to Sue on September 17, 2025.

6.

Plaintiff timely filed this action within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue from the EEOC, as required by law.

## PARTIES

7.

Plaintiff, Laurie Passini, is a citizen of the United States and a resident of Graham, Kentucky, and is subject to the jurisdiction of this Court.

8.

Defendant Saft America, Inc. is a foreign profit corporation with a principal office address located at 13575 Waterworks Street, Jacksonville, FL. Defendant is qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this district.

9.

Defendant operates a manufacturing facility located at 711 Gil Harbin Industrial Boulevard, Valdosta, Georgia 31601, may be served with process by delivering a copy of the summons and complaint to its corporate representative, Cogency Global Inc., located at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA 30076.

10.

During all times relevant hereto, Defendant has been an employer engaged in an industry affecting commerce and has employed 501 or more employees for each working day in each of twenty or more calendar weeks in the current and preceding calendar years.

11.

Defendant was a covered employer under the ADA in accordance with 42 U.S.C. § 12111 (2) and (5). Defendant is therefore an "employer" as defined under the Americans with Disabilities Act, 42 U.S.C. § 12111(5)(A).

12.

At all such times, Plaintiff was also an "employee" of Defendant as defined under the ADA, 42 U.S.C. § 12111(4).

## FACTUAL ALLEGATIONS

13.

On December 2, 2024, Ms. Passini was hired by Jody Beasley, Plant General Manager, as Industrial Risk Manager for Defendant's manufacturing facility in Valdosta, Georgia.

14.

As Industrial Risk Manager, Ms. Passini 's job duties included: identifying, assessing, and mitigating major risks associated with Defendant's operations, including fire, explosion, pollution, and toxicity risks; developing and implementing an industrial risk management program, including critical safety barriers; coordinating with other departments to ensure activities were conducted safely and in compliance with applicable regulations; determining action plans required to manage industrial risks; representing the site's technology risk management activities with regulatory agencies including DREAL, Prefecture, EPA, and local government agencies; coordinating inspections, replying to and endorsing letters and studies sent in Ms. Passini's field; managing process safety risk analyses by ensuring that specialist resources were available and competent; developing the methodological skills of employees and the skills to manage technological risks within the site by organizing the dissemination of best practices and a process safety

culture; serving as guarantor of the site safety management system and validating change requests on the industrial risk aspect; implementing the One Maestro program for the Valdosta facility; and preparing the facility for One Maestro audits.

15.

Ms. Passini is a chemical engineer with over 25 years of experience in EHS and risk management and is a certified lead auditor and risk management professional.

16.

Ms. Passini relocated from Mt. Dora, Florida to Valdosta, Georgia to work for Defendant in the Industrial Risk Manager role.

17.

Ms. Passini has autism. Autism is a disability covered by the Americans with Disabilities Act.

18.

To self-regulate the effects of Ms. Passini's autism, she may exhibit stimming behaviors.

19.

Stimming is the colloquial term for self-stimulatory behavior and it is defined as a repetitive performance of certain physical movements or vocalizations, as a form of behavior by persons with autism or other neurodevelopmental condition.

20.

For persons with autism, such as Ms. Passini, stimming is more noticeable and is used to manage emotions, sensory input, or express feelings and serves as a self-regulation tool.

21.

Ms. Passini's stims are playing Candy Crush on her phone and repetitively moving in her seat.

22.

Ms. Passini disclosed her disability during the new hire orientation process to Marissia Lane, HR Generalist II.

23.

Ms. Passini also disclosed her disability on the company new hire forms by Defendant during the new hire orientation.

24.

Ms. Passini requested accommodations for her disabilities to help her succeed in the workplace.

25.

In response to Ms. Passini's accommodation requests, Lane stated that the company could manage the accommodations requested.

26.

On January 17, 2025, Plant General Manager, Jody Beasley, held an offsite meeting to discuss the goals for 2025.

27.

During the offsite meeting, there were several breakout sessions involving different groups, and Ms. Passini participated in the site security and 50th Anniversary sessions.

28.

On February 6, 2025, a follow-up meeting was held for site security.

29.

During the February 6, 2025, meeting, the group identified several areas that needed to be updated, and Jason Shaw discussed several ideas he had regarding the upgrade.

30.

During the site security session, Ms. Passini expressed that she had experienced issues with what Shaw planned to do with the upgrade.

31.

Ms. Passini mentioned a cloud-based system that she had used in the past, which had several capabilities that would work for what Shaw needed.

32.

In response to Ms. Passini's suggestion, Shaw leaned across the table and yelled at Ms. Passini, and stated "You need to stop."

33.

Shay Davis, the HR Manager, was a part of the session and witnessed Shaw's behavior but failed to intervene.

34.

In response to Shaw's tone and statements, Ms. Passini began to stim to help calm and neutralize her heightened emotional state that the interaction with Shaw caused.

35.

On February 7, 2025, Plant General Manager Jody Beasley was made aware of the incident between Ms. Passini and Jason Shaw by Shay Davis, HR Manager.

36.

Beasley spoke with both Ms. Passini and Shaw separately to understand what happened and what could be done differently in the future.

37.

When Beasley spoke to Ms. Passini, she shared that she did not behave any differently than Shaw and de-escalated the situation by stimming.

38.

Ms. Passini and Shaw exchanged apologies for the interaction.

39.

Following this incident, Ms. Passini believed that they would be able to move forward with no issues.

40.

On February 12, 2025, Ms. Passini attended a meeting held to discuss the One-Maestro Audit, led by Aaron Maurer, Configuration & Data Manager.

41.

One Maestro is a complex health, safety, and environment management system.

42.

The specific topics to be discussed at the meeting were the preparation for the audit, progress updates, and how much work still needed to be done.

43.

Before the meeting began, Ms. Passini overheard a conversation between Shay Davis and Craig Lucas, the Maintenance Manager, about the One Maestro implementation.

44.

Craig Lucas stated "we want to do the bare minimum" in reference to the implementation of One Maestro.

45.

In response, Shay Davis, HR Manager, stated "that's right."

46.

Ms. Passini had previously heard Craig Lucas state to her in regards to the Permit to Work Document that Ms. Passini had updated, "you know if you write these things down, we have to do them."

47.

The statements about "bare minimum" upset Ms. Passini as she is a chemical engineer with over 25 years of experience and has never been a "bare minimum" or a "check the box" type of person.

48.

Ms. Passini has worked at dangerous places with hazardous chemicals where "bare minimum" can result in death and planetary destruction.

49.

Present at the meeting was a room full of managers who didn't seem concerned by Lucas's "bare minimum" statement.

50.

Attempting to self-regulate, Ms. Passini began to stim and started squirming in her seat.

51.

Ms. Passini also turned her back to the table at one point to try and prevent the others from seeing her in a heightened emotional state.

52.

At some point during the management meeting, Ms. Passini received a pop-up message on her computer stating that the computer had a virus.

53.

Ms. Passini informed Defendant's IT department using the ticket system as trained.

54.

Towards the end of the management meeting, Ms. Passini received a notice from the IT department stating that she needed to bring her computer to their office immediately.

55.

Ms. Passini excused herself from the meeting and went to deliver her computer to the IT department.

56.

Upon arrival in the IT department office, Ms. Passini was accused of making changes to her computer to bypass security protections.

57.

The IT department kept Ms. Passini's computer, and Ms. Passini went home shortly after as it was near the end of the workday.

58.

On February 13, 2025, Beasley and Lane called Ms. Passini in for a meeting.

59.

Beasley asked Ms. Passini how the One Maestro meeting, held on February 12, 2025, went.

60.

Ms. Passini responded by saying that she did not think the meeting went well.

61.

Beasley began to mimic Ms. Passini's stimming movements that she displayed during the February 12, 2025, meeting by moving repeatedly in his chair.

62.

Beasly stated that Ms. Passini's reactions were unprofessional and disrespectful.

63.

Beasley asked Ms. Passini to go home for the remainder of the day and stated that he would be in touch to discuss her future with the Defendant company.

64.

Ms. Passini called Beasley after the meeting and said she would like to remain employed.

65.

In response, Beasley informed Ms. Passini that she was terminated from employment with Defendant effective February 13, 2025.

66.

Defendant did not provide Ms. Passini with a reason for termination at the time of termination.

67.

On July 28, 2025, in its response to Ms. Passini's EEOC Charge of Discrimination, Defendant stated that Ms. Passini was terminated for unprofessional conduct that disrupted workplace meetings/operations and direct violation of Saft's established Code of Conduct and behavioral expectations.

68.

Ms. Passini is an individual with a disability, as defined by the Americans with Disabilities Act, as amended.

69.

Ms. Passini's disability did not prevent her from performing the essential functions of her job as Industrial Risk Manager. Rather, the attention to detail and risk-aversion associated with Autism is a benefit to an Industrial Risk Manager.

70.

Ms. Passini's behaviors during the workplace incidents were manifestations of her autism, a disability which she had disclosed to Defendant.

71.

Ms. Passini requested reasonable accommodations for her disabilities.

72.

Reasonable accommodations could have addressed any interpersonal challenges related to Ms. Passini's disability.

73.

Defendant failed to engage in the interactive process with Plaintiff, even though doing so would not have been an undue hardship.

74.

Instead of providing reasonable accommodations or engaging in the interactive process after Ms. Passini disclosed her disability and requested accommodations, Defendant discriminated against her based on her disability.

75.

Defendant failed to provide Ms. Passini with the approved reasonable accommodations that would have addressed interpersonal challenges related to her disability.

76.

Instead, when Ms. Passini exhibited behaviors related to her autism, Defendant mocked her by mimicking her stim movements and terminated her employment.

77.

Ms. Passini's professional expertise and input regarding risk management, safety compliance, and audit preparation were repeatedly dismissed or met with hostility, creating an environment where her expertise was invalidated and contributed to emotional distress directly tied to her disability.

78.

The stated reasons for Ms. Passini's termination are pretextual and not the true reasons for her discharge. Or, in the alternative, Ms. Passini's disability was a motivating factor that led to her discharge.

79.

Ms. Passini was terminated because of her disability and in retaliation for requesting accommodations. Or, in the alternative, Ms. Passini's disability and request for accommodations were motivating factors that led to her termination.

80.

Defendant terminated Ms. Passini shortly after workplace incidents in which Ms. Passini's disability-related emotional responses were exhibited, rather than providing the approved accommodations she had given.

81.

But for, Ms. Passini's disability, she would not have suffered the adverse actions contained in this Complaint.

82.

As a direct result of Defendant's discriminatory actions, Ms. Passini has suffered economic damages.

83.

Ms. Passini's economic damages include lost wages, lost benefits, and relocation expenses.

84.

As a direct result of Defendant's discriminatory actions, Ms. Passini has suffered non-economic damages.

85.

Ms. Passini's non-economic damages include emotional distress, harm to her professional reputation, and mental anguish.

## CLAIMS FOR RELIEF
## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

86.

Plaintiff re-alleges and incorporates paragraphs 1 through 85 as if fully set forth herein.

87.

Plaintiff had previously been diagnosed with autism.

88.

Plaintiff's autism a disability within the meaning of the ADA, as amended.

89.

Defendant was aware of Plaintiff's disability.

90.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined by the ADA.

91.

Defendant violated 42 U.S.C. § 12112(d) by mimicking her stim behaviors and terminating her employment when Plaintiff exhibited her stim behaviors in the workplace.

92.

Defendant terminated Plaintiff because of her disability and/or perceived disability.

93.

By terminating Plaintiff because of her disability, the Defendant violated the ADA, as amended.

94.

Although the Defendant purports to provide a legitimate, non-discriminatory reason for the adverse action, this reason is a thinly veiled pretext for disability discrimination. Or, in the alternative, Plaintiff's disability was a motivating factor that led to the adverse action.

95.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against her was undertaken in bad faith.

96.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

97.

As a direct and proximate result of Defendant's violation of the ADA, Plaintiff's employment was terminated.

98.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities.

99.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, front pay, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

100.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

101.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

**COUNT II: FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA**

102.

Plaintiff re-alleges and incorporates paragraphs 1 through 85 as if fully set forth herein.

103.

Plaintiff has autism which substantially limits one or more major life activities.

104.

Plaintiff's autism is a disability within the meaning of the ADA, as amended.

105.

Defendant was aware of Plaintiff's disability.

106.

At all times relevant to this action, Plaintiff is a qualified individual with a known or perceived disability as defined in the ADA.

107.

Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

108.

Plaintiff requested that Defendant accommodate her disability.

109.

Defendant, through its agent, approved Plaintiff's accommodation request but failed to provide the reasonable accommodations that would have enabled Plaintiff to succeed in the workplace.

110.

Defendant failed to engage in the required interactive process to determine what specific accommodations would enable Plaintiff to perform the essential functions of her job.

111.

Defendant refused to provide Plaintiff with reasonable accommodations, even though doing so would not impose an undue hardship.

112.

Defendant had a duty under the ADA to provide reasonable accommodations and to engage in an interactive process with Plaintiff to identify appropriate accommodations.

113.

Defendant's failure to provide reasonable accommodations and to engage in the interactive process violated the ADA, as amended.

114.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's failure to accommodate Plaintiff's disability was undertaken in bad faith.

115.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

116.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

117.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

118.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, front pay, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

119.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

120.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

**COUNT III: RETALIATION IN VIOLATION OF THE ADA**

121.

Plaintiff re-alleges and incorporates paragraphs 1 through 85 as if fully set forth herein.

122.

Plaintiff engaged in protected activity under the ADA by disclosing her disability during the hiring process and formally requesting reasonable accommodations for her disability.

123.

Defendant was aware of Plaintiff's protected activities in disclosing her disability and requesting accommodations.

124.

Defendant took adverse employment action against Plaintiff by terminating her employment on February 13, 2025.

125.

The temporal proximity between Plaintiff's accommodation request and her termination, combined with the fact that she was terminated for disability-related behaviors, establishes a causal connection between the protected activity and the adverse action.

126.

Defendant's adverse action was taken in retaliation for plaintiff's protected activity in disclosing her disability and requesting reasonable accommodations under the ADA.

127.

As a direct and proximate result of defendant's retaliation, plaintiff has suffered economic damages including lost wages, lost benefits, and other compensatory damages.

128.

As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered non-economic damages including emotional distress, harm to her professional reputation, and mental anguish.

129.

Defendant's actions were undertaken with malice or reckless indifference to Plaintiff's federally protected rights under the ADA, thereby entitling Plaintiff to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for judgment as follows:

(a) General damages for mental and emotional suffering caused by Defendants' misconduct, under the ADA;

(b) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts, under the ADA;

(c) Back wages and benefits and prejudgment interest thereon on all claims;

(d) Liquidated damages in an amount equal to the award of lost wages for Plaintiff's claims under the FMLA;

(e) Reasonable attorney's fees and expenses of litigation;

(f) Trial by jury as to all issues;

(g) Prejudgment interest at the rate allowed by law;

(h) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(i) Front pay, in lieu of reinstatement, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(j) All other relief to which she may be entitled.

Respectfully submitted this 16th day of December, 2025.

**BARRETT & FARAHANY**

s/ *Constance Cooper*
Constance Cooper
Georgia Bar No. 469041

*Counsel for Plaintiff Laurie Passini*

2921 Piedmont Road NE
Atlanta, GA 30305
(470) 284-7265
constance@justiceatwork.com