**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

LAURIE PASSINI,

Plaintiff,

v.

SAFT AMERICA, INC.,

Defendant.

Case No.: 7:26-CV-00197-WLS

# ORDER

Defendant Saft America, Inc., ("Saft") moves to dismiss the complaint for failure to state a claim upon which relief may be granted. (Doc. 5.) For the reasons discussed below, the motion is granted in part and denied in part.

## I. Factual & Procedural Background[1]

Plaintiff Laurie Passini is a chemical engineer and certified lead auditor with over 25 years of risk management experience. (Doc. 1 ¶ 15.) On December 2, 2024, Plant General Manager Jody Beasly hired Passini as an industrial risk manager for Saft's manufacturing facility in Valdosta, Georgia. (*Id.* ¶ 13.) Passini moved from Mt. Dora, Florida, to Valdosta to accept the role. (*Id.* ¶ 16.)

Passini has autism, (*id.* ¶ 17), which is generally recognized as a disability under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 ("ADA"). *See* 29 C.F.R. § 1630.2(j)(3)(iii); *Bryant v. Calvary Christian Sch. of Columbus Georgia, Inc.*, No. 23-13252, 2026 WL 392142, at *8 (11th Cir. Feb. 12, 2026). To regulate the effects of her autism, Passini sometimes exhibits self-stimulatory behaviors—often referred to as "stimming." (Doc. 1 ¶ 18.) Stimming is defined by repetitive performance of certain physical movements or vocalizations and is often exhibited by people with autism or other neurodevelopmental conditions. (*Id.* ¶ 19.) People with autism often use stims to manage emotions and sensory input. (*Id.* ¶ 20.)

[1] At the motion to dismiss stage, the Court accepts the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff. *E.g.*, *Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*, 147 F.4th 1341, 1346 (11th Cir. 2025).

Passini's stims include repetitively moving in her seat and playing games like Candy Crush on her phone. (*Id.* ¶ 21.) During her orientation, Passini disclosed her disability to Marissia Lane, a human resources generalist, and on the company's new hire forms. (*Id.* ¶¶ 22–23.) Passini alleges that she "requested accommodations for her disabilities to help her succeed in the workplace." (*Id.* ¶ 24.) Lane told Passini that the company could manage the requested accommodations. (*Id.* ¶ 25.)

In January 2025, Beasley held an offsite meeting to discuss goals for the year. (*Id.* ¶ 26.) The next month, site security held a follow-up meeting in which "the group identified several areas that needed to be updated." (*Id.* ¶¶ 28–29.) One employee, Jason Shaw, suggested several ideas for the update, but Passini identified several issues with Shaw's plans. (*Id.* ¶¶ 29–30.) Passini instead suggested "a cloud-based system that she had used in the past" that would provide what Shaw needed. (*Id.* ¶ 31.) In response to her suggestion, Shaw leaned across the table to yell at her and stated, "You need to stop." (*Id.* ¶ 32.) HR Manager Shay Davis was at the meeting but never intervened. (*Id.* ¶ 33.) This confrontation put Passini into a "heightened emotional state" and she began to stim to calm down. (*Id.* ¶ 34.)

The next day, Davis informed Beasley of the incident. (*Id.* ¶ 35.) Beasley spoke to Passini and Shaw separately to investigate. (*Id.* ¶ 36.) Passini explained to Beasley that she had behaved no differently from Shaw and calmed herself by stimming. (*Id.* ¶ 37.) After exchanging apologies with Shaw, Passini believed that they would move forward with no issues. (*Id.* ¶¶ 38–39.)

On February 12, 2025, Passini attended a meeting that Configuration and Data Manager Aaron Maurer led to discuss the One Maestro Audit. (*Id.* ¶ 40.) One-Maestro is a "complex health, safety, and environment management system." (*Id.* ¶ 41.) The meeting was to cover audit preparation and progress updates. (*Id.* ¶ 42.) Before the meeting Passini overheard Maintenance Manager Craig Lucas tell Davis, "we want to do the bare minimum" when implementing the One-Maestro system, and Davis agreed. (*Id.* ¶¶ 43–45.) When Passini had previously updated a Permit to Work document, Lucas had told her, "you know if you write these things down, we have to do them." (*Id.* ¶ 46.) Lucas's statements about doing the "bare minimum" upset Passini because "she is a chemical engineer with over 25 years of

experience and has never been a 'bare minimum' or a 'check the box' type of person." (*Id.* ¶ 47.) In Passini's experience in working at places with hazardous chemicals, doing only the bare minimum can be catastrophic. (*Id.* ¶ 48.) She was especially upset because the room full of managers seemed unconcerned with Lucas's "bare minimum" statement. (*Id.* ¶ 49.) Attempting to self-regulate, Passini began to stim and shifted about in her seat. (*Id.* ¶ 50.) At one point, she also turned her back to the table to prevent others from seeing her upset. (*Id.* ¶ 51.)

During the meeting, Passini received a pop-up message on her computer stating that her computer had a virus. (*Id.* ¶ 52.) She informed the IT department of the virus using the ticket system, as she was trained to do. (*Id.* ¶ 53.) Toward the end of the meeting, the IT department sent Passini a notice saying that she needed to bring her computer to their office immediately. (*Id.* ¶ 54.) Passini excused herself from the meeting and delivered her computer to the IT department office, where someone accused her of making changes to her computer to bypass security protections. (*Id.* ¶¶ 55–56.) IT kept Passini's computer and she went home soon after because it was near the end of the workday. (*Id.* ¶ 57.)

The next day, Beasley and Lane met with Passini. (*Id.* ¶ 58.) Beasley asked Passini how the One Maestro meeting went. (*Id.* ¶ 59.) Passini responded that she did not think it went well. (*Id.* ¶ 60.) Beasley then began mimicking Passini's stimming movements that she had exhibited the day prior and said that Passini's reactions were unprofessional and disrespectful. (*Id.* ¶¶ 61–62.) He told Passini to go home for the day and that he would be in touch to discuss her future with the company. (*Id.* ¶ 63.) After the meeting, Passini called Beasley to say that she wanted to keep her job. (*Id.* ¶ 64.) Beasley, however, told Passini that he was terminating her employment, effective that day, but provided no reason for the termination. (*Id.* ¶ 65.)

Passini filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 9, 2025, and received a right to sue notice on September 17, 2025. (*Id.* ¶ 5.) Saft responded to the charge by stating that it terminated Passini for unprofessional conduct that disrupted workplace meetings and operations in violation of Saft's established code of conduct and behavioral expectations. (*Id.* ¶ 67.) Passini filed this lawsuit

on December 16, 2025, bringing claims for disability discrimination, failure to accommodate, and retaliation in violation of the ADA. (*Id.* ¶¶ 86–129.)

Passini alleges that her autism is a disability as defined by the ADA and that her behaviors during the workplace incidents were manifestations of her autism. (*Id.* ¶¶ 68, 70.) She also alleges that her autism does not prevent her from performing the essential functions of her job as an industrial risk manager. (*Id.* ¶ 69.) Passini claims that she requested reasonable accommodations for her disability, which could have addressed any interpersonal challenges she may have had because of her autism. (*Id.* ¶¶ 71–72.) She concludes that Saft failed to engage in the interactive process and instead discriminated against her based on her disability. (*Id.* ¶¶ 74–75.) She claims that when she exhibited behaviors related to her autism, Beasley mocked her by mimicking her stim movements and Saft terminated her employment. (*Id.* ¶ 76.) She thus alleges that the stated reasons for her termination were pretextual and that her autism was either the true reason for her discharge, or at least a motivating factor in her discharge. (*Id.* ¶¶ 77–81.)

Passini brings three claims: (1) disability discrimination, (*id.* ¶¶ 86–101); (2) failure to accommodate, (*id.* ¶¶ 102–120); and (3) retaliation for disclosing her disability during the hiring process and formally requesting reasonable accommodations, (*id.* ¶¶ 121–129). Saft moved to dismiss the complaint under Rule 12(b)(6), arguing that Passini failed to exhaust her administrative remedies and failed to state a claim upon which relief may be granted. (Doc. 5.)

## II. ADMINISTRATIVE EXHAUSTION

Saft argues that Passini failed to exhaust her administrative remedies for her failure-to-accommodate claim. (*Id.* at 14–15.) It contends that in her EEOC Charge, Passini alleged disability discrimination but did not put Saft on notice of her failure-to-accommodate theory. (*Id.*)

In the Charge, Passini states that she disclosed her disability during the hiring process and that Saft approved her requested accommodation. (Doc. 5-1 at 2.) She also states that Beasley told her that she was discharged because he viewed her actions during the meeting of February 11, 2025, as disrespectful. (*Id.*) Passini concludes the charge by stating that she believes that she was "discriminated against because of [her] disability and retaliated against in

violation of Title I of the Americans with Disabilities Act of 1990, as amended." (*Id.*) But the Charge does not make her failure-to-accommodate claim explicit.

To bring an ADA discrimination claim, an employee must first exhaust their administrative remedies by filing a charge with the EEOC. *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018) (citation omitted). A "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dept. of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (citations omitted). But courts are reluctant to allow a procedural technicality to bar a claim brought under discrimination statutes like the ADA. *Batson*, 897 F.3d at 1328 (quoting *id.*). Thus, "the scope of an EEOC complaint should not be strictly interpreted." *Id.* (citations omitted). To determine whether Passini exhausted her administrative remedies, the proper inquiry is whether her "complaint was like or related to, or grew out of, the allegations contained in her EEOC charge." *Gregory*, 355 F.3d at 1280.

In *Gregory*, for instance, the EEOC charge stated that the plaintiff believed she was terminated because of her race and sex but did not state that she was terminated in retaliation for complaining about race or sex discrimination. *Id.* She did, however, state that she was terminated shortly after being subjected to allegedly discriminatory acts. *Id.* The Eleventh Circuit concluded that this was sufficient because "[a]n EEOC investigation of her race and sex discrimination complaints leading to her termination would have reasonably uncovered any evidence of retaliation." *Id.* (citing *Danner v. Phillips Petrol. Co.*, 447 F.2d 159, 161–62 (5th Cir. 1971)).

The Charge here is much like the one in *Gregory*. Passini's Charge stated that she disclosed her disability and that Saft approved her accommodation request but discriminated and retaliated against her because of her disability. (Doc. 5-1 at 2.) These allegations would allow an EEOC investigation into her discrimination and retaliation claims to reasonably uncover any evidence that Saft did not provide Passini a reasonable accommodation, despite having formally approved one. Additionally, an employer's failure to provide an employee with a reasonable accommodation is itself a form of disability discrimination. *Batson*, 897 F.3d at 1326 (citing *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255–56 (11th Cir. 2007)). Passini's

failure-to-accommodate claim is thus "related to, or grew out of, the allegations contained in her EEOC charge." *Gregory*, 355 F.3d at 1280. Passini therefore exhausted the administrative remedies for her failure-to-accommodate claim.

## III. FAILURE TO STATE A CLAIM

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (citation omitted). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A complaint must instead make plausible, factual assertions that allow the Court to draw the required connections between the alleged harm and the requested relief. *Id.*

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (citation omitted). In evaluating the sufficiency of a plaintiff's pleadings, the Court must make reasonable inferences in the plaintiff's favor, but it is "not required to draw plaintiff's inference." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). And while the Court must accept factual allegations as true, this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555).

### B. Discussion

#### 1. Disability Discrimination

"To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that at the time of the adverse employment action, she (1) had a disability,

(2) was a qualified individual, and (3) was subjected to unlawful discrimination because of her disability." *Batson*, 897 F.3d at 1326 (citing *Holly*, 492 F.3d at 1255–56). Passini asserts two theories of disability discrimination: disparate treatment, (Doc. 1 ¶¶ 86–101), and failure to provide a reasonable accommodation, (*id.* ¶¶ 102–120). These theories differ in how they establish the third element. Because Saft challenges only that third element, the Court assumes for the purposes of the motion to dismiss that Passini had a disability and was a qualified individual.

Both theories require Passini to plausibly allege that the employer had actual knowledge of her disability. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1185 (11th Cir. 2005); *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 2007). Although Saft addresses the actual knowledge requirement for both causes of action together, the standard differs somewhat between these two types of disability discrimination.

### a. *Disparate Treatment*

To state a claim for disparate treatment under the ADA, a plaintiff must plead facts sufficient to show that the *decisionmaker* behind the adverse employment action had actual knowledge of the disability. *Cordoba*, 419 F.3d at 1185; *Ebbert v. Ocean City Wright Fire Control Dist.*, No. 25-10435, 2026 WL 2296504, at *2 (11th Cir. Aug. 10, 2026). Saft contends that Passini has not plausibly alleged this requirement.[2] (Doc. 5 at 11.) In support, it argues only that Passini's allegations about her "purported disclosure of a medical condition are conclusory and must be disregarded." (*Id.*) But Passini alleges that she disclosed her disability to Lane, an HR generalist, and on the company's new hire forms. (Doc. 1 ¶¶ 22–23.) If disclosing her disability to HR was not enough to put Saft on notice, it is difficult to imagine whom Passini should have disclosed her disability to. It would be unreasonable to expect a disabled employee to personally disclose their disability to every manager who might be empowered to take an adverse employment action against them.

The Court can reasonably infer from Passini's allegations that the decisionmaker who terminated her employment knew of her disability at the time. *See Iqbal*, 556 U.S. at 678–79.

---

[2] Saft argues that Passini fails to allege the company knew of her disability. (Doc. 5 at 10–11.) But the relevant inquiry here is whether the *decisionmaker* knew of her disability. *See Cordoba*, 419 F.3d at 1185.

Passini disclosed her autism to Lane at the start of her employment. About two months later Passini exhibited stimming behavior—which was caused by her autism—at the One Maestro meeting. The next day, Lane and Beasley met with Passini to discuss her behavior at the meeting. Beasley then mocked Passini's stimming movements and terminated her employment that same day. From these allegations, it is reasonable to infer that Beasley and Lane decided to terminate Passini's employment because she exhibited behavior caused by the disability she had disclosed to at least one of them. At the motion-to-dismiss stage, Passini need not prove that every person who might have been involved in the termination decision personally knew of her disability.[3] She thus states a claim for disparate treatment.

### *b. Failure to Accommodate*

To state a disability discrimination claim under a failure to accommodate theory, Passini must plausibly allege that (1) her employer knew of her disability; (2) she requested an accommodation; (3) a reasonable accommodation would have allowed her to perform the essential functions of her job; and (4) the employer failed to provide a reasonable accommodation. *See Gaston*, 167 F.3d at 1363; *Howard v. Steris Corp.*, 886 F. Supp. 2d 1270 (M.D. Ala. 2012), *aff'd*, 550 F. App'x 748 (11th Cir. 2013). And where a company designates an individual as an employee's contact point for personnel matters like reasonable accommodations, it cannot avoid its responsibility to provide accommodations on the ground that the employee did not inform the company's decisionmakers of their disability. *See Cordoba*, 419 F.3d at 1184; *see also Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 876 (9th Cir. 1989) (applying agency law principles to determine an employer's knowledge of an employee's disability). Saft contends that Passini fails to state a failure-to-accommodate claim because she does not adequately plead either of the first two elements.

The actual knowledge requirement is more forgiving for a failure-to-accommodate claim than it is for a disparate treatment claim. Unlike a disparate treatment claim, which requires the *decisionmaker* to know of the employee's disability and accommodation request, a failure-to-accommodate claim depends on the *employer's* knowledge. Because a corporation

[3] The Court does not consider Saft's claim that Passini first disclosed her autism after her employment was terminated. (Doc. 5 at 5.) Because this assertion was made outside the pleadings, the Court must not entertain it. *See Theater v. Palm Beach Cnty. Sherriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006).

"cannot act other than through its officers, employees, and agents," the question whether knowledge can be imputed to a company is appropriate in the context of a failure-to-accommodate claim. *See, e.g.*, *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (citation omitted). This is so even though the Eleventh Circuit does not recognize constructive knowledge as a theory of disability discrimination. *See Cordoba*, 419 F.3d at 1185. A constructive knowledge theory would require an employer to infer an employee's disability where the employee does not explicitly disclose one. The question here is different—it is whether Passini's disclosure to Lane qualifies as disclosure to Saft.

It is thus appropriate to turn to traditional agency law principles to determine whether Saft can be charged with knowledge of Passini's disability. *See Kimbro*, 889 F.2d at 876; *cf. Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 72 (1986) (holding that courts should look to agency principles for guidance in determining employer liability under Title VII for sexual harassment by their supervisors). Under Georgia law, "[n]otice to the agent of any matter connected with his agency shall be notice to the principal." Ga. Code Ann. § 10-6-58. It was presumably within Lane's duties as an HR Generalist to convey to the appropriate decisionmakers the information she receives about employees' disabilities. Passini's disclosure to Lane thus gave Saft actual knowledge of her disability. *See id.*; *see also* Restatement (Third) of Agency § 5.02(1) (A.L.I. 2006) ("A notification given to an agent is effective as notice to the principal if the agent has actual or apparent authority to receive the notification . . . .").

While Passini plausibly alleges that she disclosed her disability to Saft, she has not adequately alleged that she requested an accommodation. And unless Passini requested an accommodation, Saft had no duty to provide one. *See Gaston*, 167 F.3d at 1363. Passini alleges that she "requested accommodations for her disabilities to help her succeed in the workplace," and that Lane responded that "the company could manage the accommodations requested." (Doc. 1 ¶¶ 24–25, 108–109.) But Passini does not allege what accommodation she requested. Her allegation that she "requested an accommodation" amounts only to a threadbare recital of this element of her claim. *See Iqbal*, 556 U.S. at 678–79. Because she does not allege any facts to support the conclusion that she requested a reasonable accommodation, Passini fails to state a failure-to-accommodate claim.

**2. Retaliation**

To state an ADA retaliation claim, Passini must plausibly allege that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the two. *E.g.*, *Batson*, 897 F.3d at 1329 (citations omitted). A protected activity "is causally linked to adverse action if retaliation 'somehow figured into' the decision to take that action." *Lowery v. Jefferson Cnty. Racing Ass'n*, No. 25-12093, 2026 WL 111705, at *2 (11th Cir. Jan. 15, 2026) (citations omitted). To show this, a complaint must include facts that allow the Court to reasonably infer that the decisionmaker knew of the protected activity. *Id.* (citations omitted); *see Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 998 (11th Cir. 2025) (citation omitted). "A 'close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (citation omitted). Saft contends that Passini did not plead facts that would show that she engaged in statutorily protected activity. (Doc. 5 at 13–14.)

Passini alleges that she "engaged in protected activity under the ADA by disclosing her disability during the hiring process and formally requesting reasonable accommodations." (Doc. 1 ¶ 122.) But again, Passini does not state what request she made. She provides only the legal conclusion that she "requested accommodations for her disability." (*Id.* ¶¶ 24, 122.) Passini could, however, base her retaliation claim only on the allegation that she disclosed her disability during her orientation. Beasley hired Passini on December 2, 2024. (*Id.* ¶ 13.) Passini presumably went through her orientation soon after she was hired and disclosed her disability to Lane during that orientation. (*Id.* ¶¶ 22–23.) Two months later, Lane and Beasley terminated Passini's employment. (*Id.* ¶¶ 58–65.) This temporal-proximity, combined with Beasley mocking Passini's stimming behavior on the day of her dismissal, is sufficient to satisfy the causal element at the motion to dismiss stage.[4] Indeed, there is no strict limit on what is within "close temporal proximity." The Eleventh Circuit has "held that a period as much as one month between the protected expression and the adverse action is not too protracted." *Higdon*,

---

[4] While Beasley's mocking behavior would, on its own, more directly support a disparate treatment claim, it also lends support to the inference that the termination was related to Passini's disclosure of her autism.

393 F.3d at 1220 (citations omitted). But it has also held that, standing alone, a three-month period between a protected activity and an adverse employment action did not allow it to reasonably infer a causal relation. *Id.* at 1221. But here, the two-month period between the protected activity and the termination, combined with the circumstances of the termination, is enough to infer a causal connection at this stage. Passini thus states an ADA retaliation claim.

## IV. Leave to Amend

Although the Court grants Saft's motion to dismiss Passini's failure-to-accommodate claim, it should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1221 (11th Cir. 2022) (citations omitted). Because Passini might well be able to add enough factual enhancement to state a failure-to-accommodate claim, the Court allows Passini leave to file an amended complaint.

## V. Conclusion

Because the complaint states a claim for disparate treatment and disability discrimination, but not failure-to-accommodate, Saft's motion to dismiss, (Doc. 5), is **GRANTED in part** and **DENIED in part**. Passini's failure-to-accommodate claim is thus **DISMISSED with leave to amend**. Passini may amend the complaint within **21 days** of the entry of this order. Saft must respond to Passini's amended complaint within **21 days** after she files it.

**SO ORDERED**, this 10th day of November, 2026.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**